# NOS. 12-10-00054-CR
# 12-10-00055-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *RICKY LYNN FLIPPO,*<br>*APPELLANT* | § | *APPEAL FROM THE 7TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Ricky Lynn Flippo appeals his convictions for deadly conduct, for which he was sentenced to imprisonment for twenty years, and aggravated assault, for which he was sentenced to imprisonment for life.   Appellant raises four issues on appeal.   We modify and, as modified, affirm.

### BACKGROUND

Appellant was charged by separate indictments with deadly conduct and aggravated assault and pleaded "guilty" to each charged offense.   Ultimately, the trial court sentenced Appellant to imprisonment for twenty years for deadly conduct and to life imprisonment for aggravated assault. The trial court further ordered that Appellant pay restitution in the amount of $27,294.68 in connection with the aggravated assault conviction.   This appeal followed.

On July 13, 2011, this court entered a per curiam order, in which we held that the trial court abused its discretion in ordering that Appellant pay $27,294.68 in restitution in connection with his conviction for aggravated assault because the amount ordered does not have a factual basis in the record.   Accordingly, we set aside the amount of restitution, abated the appeal, and remanded the cause to the trial court for a new restitution hearing.

On August 1, 2011, the trial court conducted a hearing as ordered.   At the hearing, Appellant

and the State entered into an agreement that Appellant would pay $7,775.19 in restitution to the Texas Crime Victims' Compensation Fund.[1]   In further compliance with this court's per curiam order, the trial court provided this court with findings of fact and conclusions of law regarding the restitution hearing as well as a reporter's record of the hearing.

### FAILURE TO CONSIDER THE FULL RANGE OF PUNISHMENT

In his first issue, Appellant argues that the trial court did not consider the full range of punishment with regard to his life sentence he received for aggravated assault, thereby denying Appellant due process and due course of law.   In his second issue, Appellant argues that the trial court improperly assessed what the court believed a Smith County jury would assess as punishment denying Appellant due process and due course of law.   Because these two issues are interrelated, we address them together.

The Fourteenth Amendment provides that the state may not "deprive any person of life, liberty, or property, without due process of law."   U.S. CONST. amend. XIV; *see also* TEX. CONST. art. I, § 19.   Due process requires that the trial court conduct itself in a neutral and detached manner. *Gagnon v. Scarpelli*, 411 U.S. 778, 786, 93 S. Ct. 1756, 1762, 36 L. Ed. 2d 656 (1973); *Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006); *Jaenicke v. State*, 109 S.W.3d 793, 796 (Tex. App.–Houston [1st Dist.] 2003, pet. ref'd).   "[A] trial court's arbitrary refusal to consider the entire range of punishment in a particular case violates due process."   *Ex parte Brown*, 158 S.W.3d 449, 456 (Tex. Crim. App. 2005); *see also Brumit*, 206 S.W.3d at 645.   However, absent a clear showing of bias, we presume the trial court's actions were correct.   *Brumit*, 206 S.W.3d at 645.   Bias is not shown when (1) the trial court hears extensive evidence before assessing punishment, (2) the record contains explicit evidence that the trial court considered the full range of punishment, and (3) the trial court made no comments indicating consideration of less than the full range of punishment.   *See id*.

In the case at hand, prior to assessing Appellant's punishment, the trial court stated, in pertinent part, as follows:

> Mr. Flippo, the lawyers have been here before in open sentencings numerous times.   They know my practice is always to tell defendants what I'm planning to do fairly early.   Because I, frankly, don't think it's fair to them to be thinking they're going to get one thing when they're not.   I also tell the defendants that I always try to do what I think a Smith County jury would do because I don't believe that a defendant should be punished more harshly by a Court with the Court doing an open sentencing than what a Smith County jury would do.   I also think the other side of that equation is fair and true as well; and that is that a defendant shouldn't be treated more generously or lenient by a Judge in order that

---

[1] The trial court amended its judgment for aggravated assault to reflect that amount of agreed restitution and changed the payee from "Smith County Collections Department" to "Texas Crime Victims' Compensation[.]"

they don't have to go before a Smith County jury.

In this case[,] I cannot imagine a jury assessing anything other than a life sentence. Because after they hear all the evidence in this case, I think that this issue about maybe the victim causing the fight would be falling on deaf ears. Your lawyer says y'all are not arguing that, but that's kind of what I heard from the victim testifying up here on your behalf as to the issue.

I think the jury would be just shocked and amazed - - the people here in the courtroom haven't heard it, but it's in the offense reports from the investigation that occurred that night right after the attack. That is that you call, you apparently say you need to go back to the hospital. But instead of going to the hospital, you go to two different bars and drink. Never make it to the hospital.

Apparently, drink a tremendous amount, pull out a gun, shoot at your wife driving down the road. And then when you get home you proceed to beat the tar out of her. As I said, I cover that here because I always want to make sure defendants understand why I'm sentencing them to what I'm sentencing them.

. . . .

And this is the facts. It's not some made up, well, she tripped or I punched or I didn't really do much to her. The evidence shows that it was bad. And not only bad that night. But I feel sorry for the neighbors that live out there. Obviously, you concerned them, not just this night[,] but times prior. I heard evidence that they had to call 911 two other times because of the Flippos' conduct next door to them. That puts everybody at risk.

And I've not even got to the two pages of criminal history that you have. All those things, I think, would have been shocking to a jury to hear those because of your prior felony conviction, as we talked before we picked your jury, that you would not be probation eligible, so they wouldn't be considering that.

But in punishment[,] they would have got to see all these various convictions that you had and anything else the State could have uncovered in relation to your cases.

. . . .

As I've already indicated to you, I'm going to assess the punishment I think the Smith County jury would have assessed, and I think they would have not taken very long, in my opinion, to assess a life sentence, the maximum sentence, because I think they would have thought that was the appropriate sentence under the facts of this case.

Based on these statements, Appellant argues that the trial court did not consider the full range of punishment in assessing Appellant's sentence. Specifically, Appellant contends that he could not have received deferred adjudication or regular community supervision from a jury. Therefore, he contends that the trial court's reference to its doing what a "Smith County jury would do" indicates that the court did not consider those options in assessing Appellant's punishment. We disagree.[2]

---

[2] It is unclear to this court, despite the trial court's explanation, why the trial court has chosen to undertake this approach to assessing punishment. There is no basis for this methodology in the Texas Code of Criminal Procedure, which requires little more than that the judge "announce his decision in open court as to the punishment to be assessed." TEX. CODE CRIM. PROC. ANN. art. 37.07 § 3(d) (West Supp. 2010). The trial court's departure from the requirements of the Code of Criminal Procedure, well-intentioned though it may be, is unnecessary and may serve to invite the conclusion

At the punishment hearing, the trial court asked Appellant if he understood that (1) "[f]or a first degree felony in Texas[, the range of punishment is] between 5 years and 99 years or life and up to a $10,000 fine" and (2) that is "the range of punishment [in your case.]" Appellant answered in the affirmative. The court also indicated that it had received a copy of the presentence investigation report and took judicial notice of it.

Thereafter, the trial court heard testimony from Appellant's neighbor, who testified concerning prior domestic altercations between Appellant and his wife, including one particularly violent incident in which Appellant beat his wife with a tree limb. The trial court further considered testimony offered by Appellant's wife, Nancy Flippo, who testified that she had slapped Appellant prior to his beating her to the point of her being a "bloody mess[.]" Nancy further testified that while Appellant was beating her, she was "terrified" and "in fear for [her] life." Nancy stated that, later that same night, Appellant had shot a .45 caliber handgun at her while she was driving on Highway 110. Nancy further stated that she had no hard feelings toward Appellant, that she still loved him, and that she believed both she and Appellant could "use some help." Later, the State argued to the trial court that Appellant should be sentenced to imprisonment for life based on the incident for which he was convicted, Appellant's violent behavior toward his wife, and Appellant's prior criminal and social history. The State urged the trial court to consider a life sentence for the continued safety of Appellant's wife. Appellant's attorney stated to the court that Appellant realized that his actions were not going to go unpunished. Appellant's attorney further emphasized that Appellant's wife testified that she was not afraid of him any longer and that her feelings should be given weight in determining Appellant's sentence.

The trial court made the complained of statements after hearing the evidence and arguments of counsel. Thereafter, the trial court sentenced Appellant to imprisonment for life. Throughout its protracted pronouncement of sentence, the trial court made no statements that indicated bias or a refusal to consider the full range of punishment.

To prevail on his first and second issues, Appellant must show *clear* bias to rebut the presumption that the trial court's actions were correct. *See* **Brumit**, 206 S.W.3d at 645 (holding judge's comments that earlier case made him think anybody who ever harmed a child should be put to death did not reflect bias, partiality, or failure to consider full range of punishment). In the case at hand, the trial court considered extensive evidence before assessing punishment and explicitly informed Appellant that his sentence would be within the range of punishment for his offense.

that the sentence imposed is not the considered opinion of the trial court judge.

Appellant has not indicated in his brief any statement by the trial court, other than its reference to "what a Smith County jury would do," that, in Appellant's view, indicates a clear bias or failure to consider the full range of punishment. Having considered the entirety of the record, we decline to hold that this reference, without more, supports an inference that the trial court considered only confinement as punishment for Appellant. Therefore, we conclude Appellant was not denied due process and due course of law. Appellant's first and second issues are overruled.[3]

## IMPROPER ARGUMENT

In his third issue, Appellant argues that the trial court's judgment should be reversed because the prosecuting attorney made impermissible argument during the punishment hearing before the court. Specifically, Appellant argues in his brief that the following statements, taken together, are the source of the error:

· But, again, personally, this is a case that just infuriates me.

· And then think he gains something from this Court by making her [Nancy Flippo] take that stand and get up there and say, "Well, he needs help."

· And the step up from this, Your Honor, is real obvious. The step up from this is Ms. Flippo not being here, is to bring Ms. Flippo's family, to have Ms. Flippo's mom, dad, whoever it might be, sit there and say, "I wish she could be here."

· [T]his woman's going to love him until she dies. And I truly believe it will be at his hands if ever given the chance, ever.

· I believe that with all my heart, Judge.

· [Appellant] brought that on himself. Then not to mention the other things within his criminal history: The dope, the prior felony conviction, and I don't know how many theft by checks. Going to steal from people. So he's a thief. He's a racist, wife-beating, dope-using thief. That's what's in front of this Court. That's who he is.

· That's why when I hear victims say they love the defendant, to me, that's just aggravating.

There are four permissible areas of jury argument: (1) summation of the evidence, (2)

---

[3] The State contends that Appellant failed to properly preserve error by making a timely objection to the trial court. Appellant argues that failure to consider the entire range of punishment is a structural error and need not be preserved by contemporaneous objection. We need not decide whether an objection in the trial court was required to preserve this type of error on appeal because the record in this case does not reflect bias or that the trial judge did not consider the full range of punishment. *See **Brumit v. State***, 206 S.W. 3d at 644–45 (declining to reach the preservation issue because, addressing the merits, it found that the record did not reflect partiality of the trial court).

reasonable deduction from the evidence, (3) answers to argument of opposing counsel, and (4) pleas for law enforcement.  *Willis v. State,* 785 S.W.2d 378, 384 (Tex. Crim. App. 1989).  Before a defendant will be permitted to complain on appeal about an erroneous prosecutorial argument, he must demonstrate that he objected and pursued his objection to an adverse ruling.  *See Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996).  Here, Appellant concedes in his brief that he failed to object to each allegedly improper prosecutorial argument of which he now complains on appeal.  Accordingly, we hold Appellant forfeited his right to complain about the prosecutor's allegedly improper argument.  *See id.*  Appellant's third issue is overruled.

## RESTITUTION

In his fourth issue, Appellant contends that the trial court erred in ordering restitution with regard to his conviction for aggravated assault because there was no evidence before the court in support of the amount of restitution ordered.  An appellate court reviews challenges to restitution orders under an abuse of discretion standard.  *Cartwright v. State*, 605 S.W.2d 287, 289 (Tex. Crim. App. [Panel Op.] 1980); *see Drilling v. State*, 134 S.W.3d 468, 469 (Tex. Crim. App. 2004); *Riggs v. State*, No. 05-05-01689-CR, 2007 WL 969586, at *3 (Tex. App.–Dallas Apr. 3, 2007, no pet.).  An abuse of discretion by the trial court in setting the amount of restitution will implicate due process considerations. *Campbell v. State*, 5 S.W.3d 693, 696 (Tex. Crim. App. 1999).  When there is insufficient evidence to support the amount of restitution ordered by the trial court, the proper procedure is to abate the appeal, set aside the amount of restitution, and remand the case for a hearing to determine a just amount of restitution.  *See Barton v. State*, 21 S.W.3d 287, 290 (Tex. Crim. App. 2000); *see also Drilling*, 134 S.W.3d at 471.

In addition to any fine authorized by law, a sentencing court may order the defendant to make restitution to any victim of the offense. *See* TEX. CODE CRIM. PROC. ANN. art. 42.037(a) (West Supp. 2010).  If the offense results in personal injury to the victim, the court may order the defendant to make restitution to the victim for any expenses incurred by the victim as a result of the offense or to the compensation fund for payments made to or on behalf of the victim.  *See* TEX. CODE CRIM. PROC. ANN. art. 42.037(b)(2) (West Supp. 2010).  The standard of proof for determining restitution is a preponderance of the evidence.  *See* TEX. CODE CRIM. PROC. ANN. art. 42.037(k) (West Supp. 2010).  The burden of proving the amount of loss sustained by the victim is on the prosecuting attorney.  *Id.*  The trial court may not order restitution for a loss if the victim has or will receive compensation from another source.  *See* TEX. CODE CRIM. PROC. ANN. art. 42.037(f)(1) (West Supp. 2010).  Due

6

process places three limitations on the restitution a trial court can order: (1) the amount must be just and supported by a factual basis within the record; (2) the restitution ordered must be for the offense for which the defendant is criminally responsible; and (3) the restitution must be for the victim or victims of the offense for which the defendant is charged. *See Drilling*, 134 S.W.3d at 470; *Campbell*, 5 S.W.3d at 696–97; *Martin v. State*, 874 S.W.2d 674, 677–78 (Tex. Crim. App. 1994). Further, there must be sufficient evidence in the record to support the trial court's order. *See Cartwright*, 605 S.W.2d at 289.

At the hearing, Appellant and the State entered into an agreement that Appellant would pay $7,775.19 in restitution to the Texas Crime Victims' Compensation Fund. The trial court entered an amended order reflecting the agreed amount of restitution.[4] Accordingly, because there is no evidence in the record to support the amount of restitution originally ordered and the State and Appellant have agreed to $7,775.19 in restitution payable to the Texas Crime Victims' Compensation Fund, we hold that the trial court's order that Appellant pay restitution of $27,294.68 was erroneous and should be modified. Appellant's fourth issue is sustained.

### CONCLUSION

We have overruled Appellant's first, second, and third issues and sustained Appellant's fourth issue. We, therefore, *modify* the trial court's judgment in cause number 007-1063-09 (appellate cause number 12-10-00055-CR) by deleting the order that Appellant pay restitution in the amount of $27,294.68 to Smith County Collections Department, 200 E. Ferguson, Suite 213, Tyler, TX 75702 and substituting an order that Appellant pay restitution in the amount of $7,775.19 to Texas Crime Victims' Compensation Fund, P.O. Box 12198, Austin, TX 78711-2198. We *affirm* the trial court's judgment as modified.

SAM GRIFFITH
Justice

Opinion delivered August 17, 2011.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

---

[4] Because the trial court did not have plenary power to amend its judgment, *see, e.g., State v. Aguilera*, 165 S.W.3d 695, 697–98 (Tex. Crim. App. 2005), we must modify the original judgment.